IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2019 Session

**NICOLE PAMBLANCO v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 4-13-01121      Jill Bartee Ayers, Judge**

_____

**No. M2018-01260-CCA-R3-PC**
_____

The Petitioner, Nicole Pamblanco, appeals the Montgomery County Circuit Court's denial of her petition for post-conviction relief from her convictions of aggravated child neglect, a Class A felony, and reckless homicide, a Class E felony, and effective sentence of fifteen years. On appeal, the Petitioner contends that she received the ineffective assistance of counsel because trial counsel failed to call a psychologist who had evaluated her and prepared a report to testify on her behalf. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Charles S. Bloodworth (on appeal), Clarksville, Tennessee, and Michael J. Flanagan (at trial), Nashville, Tennessee, and for the appellant, Nicole Pamblanco.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

This case relates to the death of the Petitioner's seven-month-old daughter on August 22, 2013. The Montgomery County Grand Jury indicted the Petitioner for one count of aggravated child neglect and reckless homicide.

The evidence at trial showed that the Petitioner put the victim into a bathtub and began running a bath for the victim. State v. Nicole Pamblanco, No. M2015-01870-CCA-R3-CD, 2016 WL 6958888, at *4 (Tenn. Crim. App. at Nashville, Nov. 29, 2016), perm. app. denied, (Tenn. Apr. 12, 2017). The Petitioner heard a knock at the front door and left the bathroom, with the water still running, to answer the door. Id. At least ten minutes later, the Petitioner's husband came into the house from mowing the lawn and saw the Petitioner and a friend "'just chatting away.'" Id. at *1. The Petitioner's friend had brought an alcoholic beverage with her, and the Petitioner was drinking the beverage. Id. The Petitioner's husband went into the bathroom and found the water overflowing the tub and the lifeless victim floating face-down in the water. Id. Five days later, the victim died after being removed from life support. Id. at *4.

The Petitioner testified on her own behalf but did not present any other proof, and the jury convicted her of aggravated child neglect, a Class A felony, and criminally negligent homicide, a Class E felony, as a lesser-included offense of reckless homicide. See id. The trial court held a sentencing hearing and ordered that the Petitioner serve concurrent sentences of fifteen years and one year, respectively. Id.

On direct appeal of her convictions to this court, the Petitioner claimed that the evidence was insufficient to show that she knowingly committed aggravated child neglect and that the trial court erroneously instructed prospective jurors during voir dire that her convictions would merge if the jury found her guilty of both counts. Id. at *5, 7. This court concluded that the evidence was sufficient and that the trial court erred in its instruction but that the error was harmless. Id. at *10.

The Petitioner filed a timely pro se petition for post-conviction relief, claiming, in pertinent part, that she received the ineffective assistance of counsel because trial counsel failed to call a psychologist, who had diagnosed her with attention deficit hyperactivity disorder (ADHD), to testify on her behalf at trial. The post-conviction court appointed counsel, and counsel did not file an amended petition.

At the evidentiary hearing, trial counsel testified that he was retained to represent the Petitioner and that the Petitioner was released on bond while awaiting trial. Trial counsel met with her several times in his office, and they "went over" her version of the events. The State made a fifteen-year plea offer to the Petitioner, but the Petitioner turned it down. The defense counteroffered for the Petitioner to plead guilty to a Class B felony in exchange for an eight-year sentence, but the State rejected the offer.

Trial counsel testified that he did not think it was "good idea" for the Petitioner to testify at trial because the Petitioner was remorseful but had "a flat affect." Trial counsel

and the Petitioner went "back and forth" on whether she would testify.  The Petitioner's father insisted that she testify, and it was her decision to do so.

Trial counsel testified that he did not remember if he had a mental health professional examine the Petitioner before trial.  However, he acknowledged that Dr. James Hebda may have examined her and prepared a written report.  At that point, post-conviction counsel advised trial counsel that Dr. Hebda was subpoenaed to trial and asked trial counsel why Dr. Hebda did not testify on the Petitioner's behalf.  Trial counsel said he talked to Dr. Hebda on the telephone before trial and was "a little concerned about him."  Trial counsel met with Dr. Hebda in person on the morning of trial and decided that it was not in the Petitioner's "best interest" for Dr. Hebda to testify.  Trial counsel explained,

> In 35-years of trying cases I think I've developed a good sense of how a witness will be and, with all due respect to him, he was flakey.  He showed up in sandals, was kind of talking off the wall, and I just made a decision that I don't want this guy up there, so.  [Eccentric], I guess, might be a nice way of saying it.

Trial counsel said he did not remember whether Dr. Hebda was retained or was a court-appointed expert.

Trial counsel testified that the person who brought the alcoholic beverage to the Petitioner's house on the day of the victim's death actually came to the house to buy marijuana.  Trial counsel did not want the jury to hear that the Petitioner left the victim in the bathtub in order to conduct a drug transaction.  Although the trial court ruled that the evidence was inadmissible, trial counsel was concerned that the trial court would reconsider its ruling if Dr. Hebda testified.

On cross-examination, trial counsel testified that he became licensed to practice law in 1981, that he practiced criminal law exclusively, and that he had handled hundreds of jury trials.  Trial counsel thought the Petitioner was prepared for trial.  He said that the proof against her was not overwhelming but that she was "just a bad witness."

Trial counsel testified that the Petitioner's defense was that the victim's death was an accident and that the Petitioner had been "punished enough."  Although the trial court ruled that the drug transaction was inadmissible, trial counsel was very concerned about "opening the door" to the transaction.  He said that the Petitioner must have known Dr. Hebda and suggested that Dr. Hebda testify on her behalf because trial counsel would not have "taken that approach."  He explained as follows:

- 3 -

I think if I had come in here and put on expert testimony about ADHD, then [the prosecutor] is going to take the position that I've opened up the door and that your ADHD didn't -- you're able to do a drug transaction, weren't you? And that's why I don't think I would have ever gone there.

Assistant District Attorney General Kimberly Lund testified that she prosecuted the Petitioner's case. Trial counsel tried "pretty hard" to get General Lund "to settle for something less than aggravated child [neglect]," but she refused. The Petitioner could have pled guilty to aggravated child neglect, but trial counsel never made that offer to the State. The parties did not come to an agreement, and the case went to trial.

The Petitioner testified that trial counsel did not tell her to have a mental evaluation. He told her, though, that it would be "good" for her to receive counseling at Centerstone. The Petitioner went to Centerstone regularly to receive counseling for the victim's death, and Centerstone "kind of referred" her to Dr. Hebda. Dr. Hebda evaluated the Petitioner and prepared a report, and trial counsel knew about Dr. Hebda's evaluation and findings. Trial counsel intended to call Dr. Hebda to testify as an expert witness at trial. Trial counsel did not talk to the Petitioner about his decision not to have Dr. Hebda testify, and the Petitioner did not authorize trial counsel's "dropping" Dr. Hebda as a witness. Although the Petitioner did not see Dr. Hebda on the morning of trial, she did not notice anything unusual about him when she met with him for counseling.

The Petitioner testified that she put the victim into the bathtub and became distracted by her friend's arrival. She acknowledged that the victim's death was a "terrible accident." She also acknowledged that according to Dr. Hebda's report, he diagnosed her with executive function disorder, not attention deficit disorder. In his report, Dr. Hebda stated that the Petitioner had "a high level of distraction" and could do only one task at a time, not two tasks at a time. He concluded that she became distracted, that she lost track of the amount of time the victim was in the bathtub, and that she did not deliberately drown the victim. After the trial, the Petitioner asked trial counsel why he did not call Dr. Hebda as a witness. Trial counsel said he did not think Dr. Hebda was "reliable."

In a written order, the post-conviction court denied the petition for post-conviction relief. The post-conviction court accredited trial counsel's testimony that he decided not to call Dr. Hebda as a witness because he did not think Dr. Hebda was going to be a good witness for the Petitioner and because Dr. Hebda was "'flakey, wore sandals, and talked off the wall.'" The court also accredited trial counsel's claim that he was concerned Dr.

- 4 -

Hebda's testimony would open the door to the Petitioner's leaving the victim in the bathtub to conduct a drug transaction. Regarding Dr. Hebda's written report, the post-conviction court stated as follows:

> The Psychological Evaluation of Dr. Hebda indicates an evaluation date, DOE, of 1-19-2015. However, the third page of the report has a date of 3-12-15. The date of the report is questionable. Further, the report focused on her then current mood disorder and reunification efforts with her children. Nothing in the report is relevant to her sanity, competency or diminished capacity at the time the offense was committed. Dr. Hebda's report that the petitioner likely got distracted when she left her child alone in the bathtub corroborates the petitioner's testimony at trial that she got distracted. There is nothing exculpatory in the report that would have likely changed the outcome at trial. The petitioner's claim that [trial counsel's] decision not to call Dr. Hebda as a witness amounted to the ineffective assistance of counsel is not supported by the testimony.

Accordingly, the post-conviction court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that trial counsel's decision not to call Dr. Hebda to testify "was clearly NOT a well thought out, structured, trial strategy" and that trial counsel should have asked for a continuance in order for Dr. Hebda to dress appropriately and should have consulted with the Petitioner before "abandoning" Dr. Hebda's testimony. The Petitioner acknowledges that Dr. Hebda did not testify at the evidentiary hearing but contends that Dr. Hebda's report shows "exactly" what his testimony would have been at trial. She also contends that the post-conviction court erred by concluding that Dr. Hebda's report was irrelevant to her mental state at the time of the offense because the crime of aggravated child neglect was not complete until the victim suffered serious bodily injury. Therefore, the State was required to show that the Petitioner acted knowingly during the interval of time before the rising water caused serious bodily injury to the victim. The State argues that trial counsel's decision not to call Dr. Hebda to testify was professionally reasonable and, therefore, that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Here, the post-conviction court accredited trial counsel's testimony that he did not want Dr. Hebda to testify because Dr. Hebda was dressed inappropriately and seemed "flakey" and "eccentric" on the morning of trial. The court also accredited trial counsel's assertion that he was worried Dr. Hebda's testimony would open the door to evidence that the Petitioner left the victim in the bathtub in order to conduct a drug transaction. This court has stated that "[w]hen reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics." Irick v. State, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998).

As to the Petitioner's claim that Dr. Hebda's report was relevant to her mental state during the interval of time in which she left the victim unattended until the victim suffered serious bodily injury, aggravated child neglect is a continuing course of conduct "beginning with the first act or omission that causes adverse effects to a child's health or welfare." State v. Adams, 24 S.W.3d 289, 296 (Tenn. 2000). Moreover, the offense "continues until the person responsible for the neglect takes reasonable steps to remedy the adverse effects to the child's health and welfare caused by the neglect." Id.

The Petitioner has included the trial transcript in the appellate record. During closing arguments, the State contended that the aggravated child neglect in this case began when the Petitioner walked out of the bathroom to answer the door, knowing that she was leaving a seven-month-old infant in a bathtub with the water running. The Petitioner acknowledges that she knowingly neglected the victim when she left the bathroom but appears to argue that the post-conviction court failed to recognize the importance of evidence regarding her mental state after she left the bathroom. However, the fact that the Petitioner became distracted and forgot the victim was in the tub did not stop the neglect. "Neglect simply does not lend itself to division into segments of discrete acts each having various points of termination." Id. Accordingly, we agree with the post-conviction court that Dr. Hebda's report, in which he concluded that "[g]iven Ms. Pamblanco's high level of distraction, deficits in divided attention, processing speed and memory, it is more likely than not that she became distracted and lost track of the amount of time that passed when [the victim] was in the tub," would not have changed the outcome of this case. Therefore, the post-conviction court properly denied the petition for post-conviction relief.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE

- 7 -